UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

KHAYYIM ARIF OGLU FARAJOV

CASE NO.  6:26-cr- 63-GAP-RMN

18 U.S.C. § 1343
18 U.S.C. § 1956

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH FIVE
(Wire Fraud)

#### A. Introduction

At times material to this Indictment:

1.     The United States Postal Service (USPS) was an independent agency of the executive branch of the federal government responsible for the carriage of mail matter in the United States.

2.     Transportation was a core part of USPS operations, combining Postal Service-owned and operated assets with those of contracted suppliers to move the mail across a complex transportation system that included the use of the nation's highways, air, rail, and maritime infrastructures.

3.     In addition to operating its own fleet of trucks, the USPS managed a network of highway contracts routes

4.     USPS relied on two types of highway contracts for transporting mail throughout its logistics network: Dedicated Service contracts, which operated on a

predetermined schedule and frequency and had agreed-upon fixed price rates and Freight Auction, which relied on a bid solicitation process to transport mail on an "as needed" basis.

5.      USPS implemented the Freight Auction online bid solicitation platform in October of 2021.

6.      Private companies interested in contracting for the USPS would sign up for Freight Auction and, after passing a pre-screening process, would be eligible to bid on loads.

7.      Freight Auction suppliers could be either asset-based suppliers, meaning suppliers who owned their own equipment, or brokers, meaning suppliers who subcontracted with other trucking companies to fulfil awarded contracts.

8.      When a new load became available for bidding, Freight Auction would send an email to pre-cleared suppliers. Prospective suppliers would then log in to Freight Auction, using their own unique login credentials, to either place a bid or reject the load.

9.      When placing a bid, an interested supplier would specify the price at which they were willing to service the load.

10.     If a Freight Auction bid was selected, the supplier would perform the service within the service time requirements at the bid price.

11.     At the time of service, the selected supplier or its subcontracted freight hauler would report to the USPS freight dock at the origin to pick up the load.

12.    At the freight dock, USPS personnel would provide the driver with a PS Form 5398-A, Contract Route Vehicle Record, which would include information unique to the particular load, including date, destination, scheduled arrival times, and route and trip identification numbers.

13.    At the time of departure, during intermediary stops, and/or at the time of delivery, USPS dock personnel would track a load's progress by scanning a unique barcode affixed to the truck or trailer or included in the load's accompanying paperwork.

14.    After a trip was complete, the sole process to receive payment was for the supplier to log into Freight Auction and affirm that it had delivered the awarded load by providing a "Proof of Delivery" acknowledgment.

15.    The Proof of Delivery acknowledgment consisted of logging into Freight Auction using a supplier's unique credentials, selecting the load which the supplier had purportedly delivered, manually entering dates and times of delivery, typing in a digital signature, and clicking "Submit."

16.    Upon the supplier completing the Proof of Delivery acknowledgment, Freight Auction would generate an invoice, and the supplier would automatically receive payment.

17.    If a supplier could not complete an awarded load, the provider would need to perform a "Tender Reject" action within Freight Auction, ultimately rendering the load unavailable for payment.

18.     Talishco, LLC (TALISHCO) was a logistics brokerage firm, located in Orlando, Florida, which was owned and operated by Khayyam Arif Oglu FARAJOV, a national of Azerbaijan.

19.     On or about May 16, 2022, FARAJOV, on behalf of TALISHCO, enrolled in the Freight Auction program.

20.     Between on or about June 23, 2022, and on or about January 5, 2023, the USPS awarded and paid TALISHCO for approximately 307 loads of mail matter through Freight Auction.

## B.  The Scheme and Artifice

21.     Beginning on or about June 23, 2022, and continuing until on or about January 5, 2023, in the Middle District of Florida, and elsewhere, the defendant,

### KHAYYAM ARIF OGLU FARAJOV,

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C.  Manner and Means of the Scheme and Artifice

22.     The manner and means by which the defendant sought to accomplish the scheme and artifice included, among others, the following:

a.      It was part of the scheme and artifice to defraud that FARAJOV would and did unlawfully execute a scheme to defraud the USPS of over $1 million by means of materially false and fraudulent pretenses, representations, and promises.

b.    It was further part of the scheme and artifice to defraud that FARAJOV would and did register TALISHCO to use Freight Auction as a broker supplier.

c.    It was further part of the scheme and artifice to defraud that FARAJOV would and did use Freight Auction to place bids on behalf of TALISHCO to transport loads of mail matter for the USPS.

d.    It was further part of the scheme and artifice to defraud that FARAJOV would and did intentionally fail to subcontract trucking companies to transport most of the loads which had been awarded to TALISHCO.

e.    It was further part of the scheme and artifice to defraud that FARAJOV would and did communicate with USPS personnel by email and make false excuses for why his trucks had not arrived on schedule.

f.    It was further part of the scheme and artifice to defraud that FARAJOV would and did represent to USPS personnel that he would "tender reject" the awarded loads that he had failed to deliver.

g.    It was further part of the scheme and artifice to defraud that, rather than tender rejecting said loads, FARAJOV would and did log into Freight Auction using TALISHCO's unique credentials and manually submit proof of delivery acknowledgements.

h.    It was further part of the scheme and artifice to defraud that FARAJOV's proof of delivery acknowledgements would and did trigger payments to TALISHCO from the USPS for the loads he had not completed.

5

i.     It was further part of the scheme and artifice to defraud that FARAJOV would and did receive the payments into TALISHCO's Fifth Third Bank checking account for the services he had failed to render, some portion of which he would then transfer to TALISCHO's Fifth Third Bank savings account.

j.     It was further part of the scheme and artifice to defraud that FARAJOV would and did take actions to conceal the source of the fraud proceeds by splitting up and funneling the fraud proceeds through a series of checking accounts belonging to shell companies that FARAJOV controlled.

k.     It was further part of the scheme and artifice to defraud that FARAJOV would and did transfer the fraud proceeds from his shell companies into two personal Fidelity Investments brokerage accounts that FARAJOV controlled.

l.     It was further part of the scheme and artifice to defraud that FARAJOV would and did invest the fraud proceeds in the stock market for his personal enrichment.

m.     It was further part of the scheme and artifice to defraud that FARAJOV would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme and acts committed in furtherance thereof.

### D. Interstate Wires

23.     On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**KHAYYAM ARIF OGLU FARAJOV,**

6

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | On or About Date | Interstate Wire |
|---|---|---|
| ONE | July 15, 2022 | Proof of delivery acknowledgement from TALISHCO, which was controlled by FARAJOV, in the Middle District of Florida, to the USPS via Freight Auction, which was processed using a server located outside of the State of Florida |
| TWO | August 2, 2022 | Proof of delivery acknowledgement from TALISHCO, which was controlled by FARAJOV, in the Middle District of Florida, to the USPS via Freight Auction, which was processed using a server located outside of the State of Florida |
| THREE | August 11, 2022 | Proof of delivery acknowledgement from TALISHCO, which was controlled by FARAJOV, in the Middle District of Florida, to the USPS via Freight Auction, which was processed using a server located outside of the State of Florida |

| FOUR | December 3, 2022 | Proof of delivery acknowledgement from TALISHCO, which was controlled by FARAJOV, in the Middle District of Florida, to the USPS via Freight Auction, which was processed using a server located outside of the State of Florida |
|------|------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| FIVE | December 27, 2022 | Proof of delivery acknowledgement from TALISHCO, which was controlled by FARAJOV, in the Middle District of Florida, to the USPS via Freight Auction, which was processed using a server located outside of the State of Florida |

All in violation of 18 U.S.C. § 1343.

## COUNT SIX
### (Money Laundering)

1.    The Grand Jury realleges and reincorporates paragraphs 1 through 23 of Count One.

2.    On or about November 21, 2022, in the Middle District of Florida, and elsewhere, the defendant,

### KHAYYIM ARIF OGLU FARAJOV,

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, believing that the property

8

involved in the financial transaction represented the proceeds of some form of unlawful activity

In violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## FORFEITURE

1.    The allegations contained in Counts One through Six are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.    Upon conviction of a violation of 18 U.S.C. § 1956, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.    The property to be forfeited includes, but is not limited to the following:

   a)    The contents of Fidelity Investments Brokerage Account #Z23273835 held in the name of Khayyam Farajov, which were seized on or about August 15, 2025; and

   b)    The contents of Fidelity Investments Brokerage Account #Z09611708 held in the name of Khayyam Farajov, which were seized on or about August 15, 2025,

which represent the proceeds of the wire fraud scheme and property involved in the money laundering offense.

9

5.     If any of the property described above, as a result of any act or omission of the defendant:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred or sold to, or deposited with, a third party;

   c.     has been placed beyond the jurisdiction of the court;

   d.     has been substantially diminished in value; or

   e.     has been commingled with other property which cannot be

          divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).



Foreperson

GREGORY W. KEHOE
United States Attorney

By:     Richard Varadan
        Assistant United States Attorney

By:     Chauncey A. Bratt
        Assistant United States Attorney
        Deputy Chief, Orlando Division

10

FORM OBD-34
March 26

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Orlando Division

## THE UNITED STATES OF AMERICA

vs.

## KHAYYIM ARIF OGLU FARAJOV

### INDICTMENT

Violations: 18 U.S.C. § 1343
18 U.S.C. § 1956(a)(1)(B)(i)

Foreperson

Filed in open court this 11th day

of March, 2026.

_____
Clerk

Bail $_____